IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 19-1306 JB |
| | ) | |
| **LAWRENCE SALAZAR**, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>UNITED STATES' MOTION TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B) AND AS RES GESTAE EVIDENCE</u>

The United States gives notice that it may offer, during its case-in-chief, evidence described below as evidence of the charge in the indictment and admissible evidence pursuant to Fed. R. Evid. 404(b) and as res gestae evidence. The government contends that some of the evidence in question is directly relevant to the crime charged in the indictment and need not be admitted solely pursuant to Fed. R. Evid. 404(b), but in the interests of promoting a fair and orderly trial and minimizing the potential for prejudice to either party, the United States respectfully requests that this Court issue a pretrial ruling on the admissibility of the evidence described in this motion.

### I.     PROCEDURAL BACKGROUND

On May 7, 2019, a federal grand jury returned an indictment against Defendant Lawrence Salazar alleging a violation of 18 U.S.C. § 912, impersonating a federal officer. Doc. 1. The case is set for trial on September 3, 2019. Doc. 45.

### II.    STATEMENT OF FACTS

On August 30, 2018, the Federal Protective Service (FPS) Threat Management Branch (TMB), El Paso office, began an investigation into Lawrence Salazar's attempt to conduct business at the Social Security Administration (SSA) office in Rio Rancho, New Mexico, while concealing a firearm underneath his clothing and posing as a United States border patrol agent.

On August 30, 2018, Salazar approach federal Public Safety Officer (PSO) Walker at the SSA office in Rio Rancho, displayed a badge, walked behind the PSO office area and introduced himself as a United States border patrol (USBP) agent. Salazar announced to PSO Walker that he was carrying a concealed firearm. When Salazar disclosed that he had a firearm, PSO Walker requested credentials to verify that Salazar was a federal law enforcement officer.

Salazar retrieved and displayed a gold badge with the words, "NATIONAL CONCEALED CARRY / LAW ENFORCEMENT / U.S. DEPARTMENT OF DEFENSE / OFFICERS' SAFETY ACT / SEPARATED FEDERAL OFFICER" (Law Enforcement Officers Safety Act, LEOSA) written on it. PSO Walker asked Salazar for a proper identification that was issued by USBP. Salazar then displayed a copy of his military CAC card,[1] which is identical to a Department of Homeland Security HSPD-12 PIV card, i.e., the same PIV card carried by a Border Patrol agent.[2]

PSO Walker could not confirm Salazar's law enforcement status and instructed him to remove the firearm from federal property. Salazar remained inside the restricted area where PSO Walker's desk is located. There are signs that state not to "cross the yellow line," with a yellow and black line that is taped to the floor.

Salazar did not depart and stated to PSO Walker that, under LEOSA, and the New

---

[1] The Common Access Card (CAC), a "smart" card, about the size of a credit card, is the standard identification for active duty, uniformed service personnel, selected reserve, DOD civilian employees, and eligible contractor personnel.

[2] A personal identification verification (PIV) card bears a photograph, name, department affiliation, expiration date and an electronic chip with more detailed digital information about the card-holder. Such cards are issued to most, if not all, federal employees. A PIV or HSPD-12 (Homeland Security Presidential Directive 12) card establishes a common standard for a secure and reliable form of identification for federal employees and contractors. HSPD-12 compliant identification is: issued based on sound criteria for verifying an individual employee's identity: strongly resistant to fraud, tampering, counterfeiting, and terrorist exploitation; is rapidly authenticated electronically; and, is issued only by providers whose reliability has been established by an official accreditation process.

Mexico concealed-carry law, he was allowed to carry a firearm on to the SSA property. PSO Walker informed Salazar that he, PSO Walker, was abiding by federal regulations and that Salazar could not carry the firearm into the building. Salazar then asked if PSO Walker could store his firearm in a safe that was mounted at the PSO's desk area. PSO Walker stated, "No." Salazar asked PSO Walker how he would defend himself and PSO Walker stated, "That is why I am here."

Salazar was instructed a second time by PSO Walker to depart the SSA office and remove his weapon from Federal property. Salazar again argued with PSO Walker stating he was carrying his weapon lawfully under LEOSA. PSO Walker could not verify any of Salazar's credentials. Salazar left the restricted area and walked towards the exit. Prior to Salazar exiting, he logged into a kiosk at the SSA office, obtained a ticket and then departed the SSA office. After Salazar exited the SSA office and returned a short period later, he informed PSO Walker that he was no longer carrying a firearm.

After the incident, Special Agent (SA) Manuel Castillo with FPS, TMB, met with Social Security Administration, Office of Inspector General (SSA-OIG) Special Agent (SA) Ryan Palmiter. SA Palmiter conducted a history of wages on Salazar and informed SA Castillo that Salazar had no history of wages as a law enforcement officer or military status.

### III. DISCUSSION

A. <u>The Evidence upon Which the United States Seeks a Ruling</u>

The United States may offer evidence of the charges in the indictment and as admissible evidence pursuant to Fed. R. Evid. 404(b) and as res gestae evidence. The United States plans to introduce the following evidence at trial.

- In 2000, Defendant Salazar attempted to obtain a job with the Mountainair Police Department dressed in a United States Marine Corps dress uniform. Exhibit 1 at pg. 6.

- Defendant Salazar attempted to pass himself off as a United States marine, in hopes that that status would help him obtain the job as a police officer. *Id*.

- At the same time, Defendant Salazar had also a forged certificate DDS214, which is a document indicating that Salazar had been honorably discharged from the United States military; the only purpose of such a document would be for Salazar to pass himself off as a veteran of the military. During his interview with a Department of Defense investigator, Salazar admitted the document was a forgery. *Id*. at pgs. 2-3.

- During the interview, Salazar admitted to the Department of Defense investigator that he had never been in the Marine Corps. *Id*. at pg. 6.

- On August 30, 2018, Salazar possessed and presented to PSO Walker, as a means of identification, a document entitled "NATIONAL CONCEALED CARRY / LAW ENFORCEMENT / U.S. DEPARTMENT OF DEFENSE / OFFICERS' SAFETY ACT / SEPARATED FEDERAL OFFICER" (Law Enforcement Officers Safety Act, LEOSA) written on it. Exhibit 2. This document was either a forgery, or was obtained through fraudulent means, as Defendant Salazar had never been a federal law enforcement or a military police officer. Moreover, the issuance of such identification documents is contingent upon the document-holder having completed the New Mexico concealed carry course, which Salazar did not complete.

- On May 31, 2019, Salazar appeared for his detention hearing in this case, CR 19-1306 JB. During the course of the hearing, and while arguing that he should be released upon conditions, Salazar again, through his attorney, falsely stated that he had served honorably in the United States Marine Corps. Exhibit 3.

B.   The Evidence Is Admissible Pursuant to Federal Rule of Evidence 404(b).

Federal Rule of Evidence 404(b) allows the admission of evidence of crimes, wrongs, or acts, other than those charged in the indictment, if relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). It is well settled that "[Rule 404(b)] is one of inclusion which admits evidence of other crimes relevant to an issue in a trial, unless the evidence is introduced for an impermissible purpose or undue prejudice is shown." *United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir. 1988).

In determining whether evidence is properly admitted under Rule 404(b), the Tenth Circuit applies a four-part test, known as the *Huddleston* test, which requires that:

> (1) the evidence was offered for a proper purpose;
> (2) the evidence was relevant;
> (3) the trial court determined under Fed. R. Evid. 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and
> (4) the trial court gave the jury proper limiting instructions upon request.

*United States v. Banks*, 884 F.3d 998, 1025 (10th Cir. 2018). As is discussed below, each element of the *Huddleston* test can be met here.

   1.   The Proffered Evidence Is Relevant and Admissible for Purposes of Rules 401 and 404(b).

The proffered evidence is both relevant and admissible for a proper purpose under Rule 404(b). Evidence is relevant under Federal Rule of Evidence 401 if it "tends to make the existence of any fact" of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401; *United States v. Mendoza-Salgado*, 964 F.2d 993, 1006 (10th Cir. 1992). In assessing whether evidence is offered for a proper purpose, the fact that 404(b) evidence could be used to prove propensity does not make it excludable. Rather, it is when propensity is the only thing the evidence can show that it becomes excludable. *See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007)

5

("When other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity.").

The proffered evidence is relevant as it elucidates the only fact at issue in this case, namely whether Defendant Salazar falsely impersonated a government agent and performed an action in that capacity, i.e., requesting admission to a secure facility bearing a weapon.

The evidence that Defendant Salazar passed himself previously as a member of the Marine Corps, continues to do so, and possessed a fraudulent LEOSA identification document in order to influence government officials also demonstrates proper 404(b) purposes, including Defendant Salazar's motive, intent, opportunity, preparation, plan, knowledge, identity, absence of mistake and/or lack of accident. While the United States is not privy to Defendant Salazar's planned defense, should he claim that he mistakenly believed that he was law enforcement / military or believed that it was permissible to falsely claim such position, the proffered evidence directly rebuts such claims of mistake. Alternatively, if Defendant Salazar attempts to suggest that the officers at the SSA office misinterpreted him during their interactions, the proffered evidence rebuts this claim. Even if Defendant puts on no direct defense and simply requires the United States to meet its high burden of proof, the proffered evidence remains both probative and proper as it demonstrates Defendant's motive, plan, opportunity, and modus operandi to falsely represent himself to be military or law enforcement to further his own purposes. The circumstances surrounding Defendant Salazar's conduct, spanning nineteen years to the present, represents conduct that is similar, if not, identical to the charged conduct. On all of the days set forth above, Defendant Salazar impersonated a federal agent, a former federal law enforcement officer, a veteran, and/or a member of the Marine Corps. In each instance, Salazar acted as though he were the person he was impersonating. The similarities in *modus operandi* each time

are probative of Defendant Salazar's intent, preparation, plan and knowledge to impersonate a United States border patrol agent. *United States v. Record*, 873 F.2d 1363, 1373 (10th Cir. 1989), citing *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985), *cert. denied*, 474 U.S. 1081 (1986). The government's proffered evidence is closely related to the charged conduct. Thus, it is admissible under Rule 404(b).

      2. <u>The Prior Conduct Is Close Enough in Time to the Charged Conduct, Given That It Represents a Continuing Scheme and Course of Conduct</u>.

The government acknowledges that the first event involving Salazar's impersonation of a United States marine occurred nineteen years ago, but his acts, which are similar to that act, continued from then until the present. There is no absolute rule regarding how much time can separate the acts for the evidence of the prior conduct to be admissible under Rule 404(b). *United States v. Franklin*, 704 F.2d 1183 (10th Cir.), *cert. denied*, 464 U.S. 845 (1983): "[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." *Id*. at 1189 (quoting *United States v. Engleman*, 648 F.2d 473, 479 (8th Cir.1981). A number of other courts have admitted evidence of other acts involving similar time gaps. *See, e.g. United States v. McCollum*, 732 F.2d 1419 (9th Cir.), *cert. denied*, 469 U.S. 920 (1984) (district court's ruling that evidence of twelve year old prior conviction was admissible under Rule 609 held harmless error as evidence would have been admissible under 404(b)); *United States v. Engleman*, 648 F.2d at 479 (no abuse of discretion when district court admitted evidence of crime that defendant committed thirteen years before charged offense); *United States v. Dudley*, 562 F.2d 965 (5th Cir.1977) (prior Dyer Act offense admissible under 404(b) as it occurred within six years of charged offense); *United States v. Ziedman*, 540 F.2d 314 (7th Cir.1976) (prior conviction which occurred within five years of charged offense admissible under 404(b)).

The time between the acts set forth in the indictment and some of the preceding acts the governments seeks to introduce, i.e., the impersonation of a "separated federal law enforcement officer" and Salazar's misrepresentation to the Court that had served in the Marine Corps, that are the basis of this motion occurred on the same day as the charged act or within a few months thereafter.

Moreover, the acts that occurred nineteen years ago represent a continuing course of conduct on Defendant Salazar's part. The Fourth Circuit evaluated a similar time frame in *United States v. Siegel*, 536 F.3d 306, 318–19 (4th Cir. 2008), a case involving mail and wire fraud, in which the Defendant was convicted also of murdering a potential witness:

> The Other Crime Evidence likewise tended to show Siegel's *modus operandi*: Her typical pattern was to obtain the personal information of another person, use that information to obtain credit in that person's name, and take whatever steps were necessary to prevent that person from learning about the new accounts until it was too late. She engaged in that pattern when defrauding each of her husbands, her daughters, the Mayberrys, Jack Butcher, and, of course, Jack Watkins. Because the Other Crime Evidence established a modus operandi, it is admissible under Rule 404(b). *See United States v. Tanner*, 61 F.3d 231, 237 (4th Cir.1995); see also, [*United States v.*] *Queen*, [132 F.3d 991] at 997 [(4th Cir. 1997)] (explaining that "the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes" for purposes of Rule 404(b)).
> We likewise conclude that the components of the Other Crime Evidence are individually relevant to issues other than character. Siegel told federal investigators that Watkins had a gambling problem that led to his financial difficulties, which suggests that Siegel may claim at trial that Watkins lost his house and other assets not because she stole them, but because of his gambling problem. Such a defense would undercut the government's theory of the case and its explanation of her motive for killing Watkins. The evidence that Siegel started gambling while married to her first husband and began to steal money from him to cover her losses would therefore be admissible as evidence of Siegel's motive.
> The evidence of the wallet thefts showed that Siegel was in real danger of going to jail if arrested again, given that she was still on probation for those crimes when Watkins was killed. The evidence that John Mayberry repeatedly confronted Siegel about repayment of a $3,000 loan and that Siegel repaid Mayberry around the same time that she induced Butcher to provide her with that precise amount of money indicates that Siegel's house of cards was on the verge of collapsing, thus magnifying the possibility that her probation would be revoked. The evidence that Siegel became violent when her second husband

8

> threatened to go to the police again shows the depth of Siegel's fear of going to jail. The evidence showing that Siegel defrauded her own daughters and her husband tends to show the hold that gambling had on Siegel and tends to refute any suggestion that Watkins knew about the accounts she opened in his name. Cf. Queen, 132 F.3d at 997 ("the more similar the prior act is ... to the act being proved, the more relevant it becomes" for purposes of Rule 404(b)). Finally, for the reasons discussed previously, the evidence of Siegel's defrauding of Eric helps establish Siegel's motive for killing Watkins.
> **Because Siegel had been defrauding multiple victims for at least twenty years and had never previously taken such extreme action, it is particularly important for the government to be able to explain to the jury why it was suddenly necessary for Siegel to resort to murder**. Accordingly, we conclude that the Other Crime Evidence, individually and as a whole, was relevant to issues other than Siegel's character or propensity to commit fraud. *See United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir.1996) ("To be relevant, evidence need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

*United States v. Siegel*, 536 F.3d 306, 318–19 (4th Cir. 2008) [emphasis added].

In this case, the time separating the events is not unreasonable, given that it represents a continuing course of conduct on Salazar' part to impersonate a member of the military, a former law enforcement officer, a federal agent and a veteran. The evidence is admissible under Rule 404(b).

### 3. The Probative Value of the Proffered Evidence Is Not Substantially Outweighed by Any Prejudicial Effect.

Under the familiar Rule 403 balancing test, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added); *see also United States v. Record*, 873 F.2d at 1375. Under Rule 403's balancing test, "it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the danger of that prejudice must *substantially* outweigh the evidence's probative value." *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (internal citation omitted) (emphasis in original). Furthermore, in

9

conducting the Rule 403 balancing test, this Court must "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.* (internal quotation and citation omitted). The trial court is vested with wide discretion to balance possible unfair prejudice against probative value. *United States v. Bice-Bey*, 701 F.2d 1086, 1089 (4th Cir.), *cert. denied*, 464 U.S. 837 (1983); *United States v. Masters*, 622 F.2d 83, 87-88 (4th Cir. 1980).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. *United States v. Rodriguez*, 192 F.2d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial simply because it is damaging to one's case. *United States v. Martinez*, 938 F. 2d 1078, 1082 (10th Cir. 1991). "As has been stated many times, Rule 403 does not protect a party from all prejudice, only unfair prejudice." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003).

The government's proffered evidence is prejudicial, but so is all relevant evidence adduced by the prosecution during the course of a criminal trial. The issue is whether the prejudice is unfair. In this case, it is not. The proffered evidence is not offered to provoke an emotional response from the jury, nor is it likely to do so. The only value of the proffered evidence to the government is its probative value as to the defendant's intent, preparation, plan, modus operandi, and knowledge when he impersonated a federal agent while at the SSA office in Rio Rancho. By way of an example, the government is not seeking to introduce evidence of a prior crime of violence or a theft offense to convince the jury merely that Defendant Salazar is a bad person. The government is seeking to introduce evidence that Defendant impersonated a separated member of the federal law enforcement community, a veteran, and an active member of the military to demonstrate Defendant's intention, ability, and absence of mistake when he

impersonated a federal agent at the SSA office on August 30, 2019. The government proffered 404(b) evidence also establishes Salazar' preparation, plan and knowledge to impersonate a federal agent and to act as such.

To be unfairly prejudiced by the Rule 404(b) evidence, the jury would have to be unconvinced of Defendant's guilt based on the evidence directly related to the pending charge, yet decide to convict Defendant anyway based solely on a propensity inference they have been specifically instructed not to draw because of reference to the other similar evidence. This scenario seems improbable. As such, the probative value of the proffered evidence outweighs any potential for unfair prejudice, and any prejudice can be moderated by cautionary instructions from the Court at the time of the admission of the evidence, and if requested, again in the final charge to the jury at the close of the case. *United States v. Record*, 873 F.2d at 1376.

4. The Court Can Offer a Limiting Instruction to the Jury.

The United States does not object to an appropriate limiting instruction on the use of the 404(b) evidence should Defendant desire that one be given.[3]

For the reasons set forth above, the United States submits that the proferred evidence is admissible under Rule 403.

C. The Evidence Is Admissible as Res Gestae Evidence.

Some of the evidence proffered by the government, e.g., Defendant Salazar's possession of a false LEOSA document and misrepresentation to the Court of his status as a former marine, are evidence inextricably intertwined with the evidence of the charge in the indictment and is admissible at trial because such evidence: "provides the context for the crime, is necessary to a

---

3 For example, the court could read the Tenth Circuit Pattern Criminal Jury Instruction 1.30 concerning Rule 404(b) evidence.

full presentation of the case, [and] is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae." *United States v. Ford*, 613 F.3d 1263 (10th Cir. 2010); *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995); *United States v. Zuni*, 2006 WL 4109664 *6 (D.N.M. 2006). The circumstances leading up to Defendant's arrest and the event thereafter are "inextricably intertwined with proper evidence," *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1999), and therefore the circumstances should be admissible at trial. *See also United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (defining res gestae as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."

As the *Hardy* Court explained:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748 (citation omitted).

Evidence of how Salazar misrepresented himself as a former federal law enforcement officer, active duty marine and veteran, and how he tried to mislead the Court into granting him release from custody by falsely claiming to have been a marine is proper res gestae evidence. *See also United States v. Bell*, 187 Fed. App. 610, 612 (7th Cr. 2006)(Probative value of evidence that firearm recovered from defendant's apartment was same one used in "shots fired" incident in parking lot in explaining circumstances that led to recovery of weapon was not outweighed in prosecution for being felon in possession of firearm by its potential to prejudice jury with knowledge of defendant's possible involvement in uncharged crime).

## IV. CONCLUSION

For all the above reasons, the United States respectfully requests that this Court allow the

above-described evidence to be offered in the prosecution's case-in-chief.    Pursuant to Federal Rule of Criminal Procedure 12(d), the government respectfully requests a pre-trial ruling on this motion.

        Respectfully submitted,

        JOHN C. ANDERSON
        United States Attorney

        *__Electronically filed__*
        NORMAN CAIRNS
        HOLLAND KASTRIN
        Assistant U.S. Attorneys
        P.O. Box 607
        Albuquerque, New Mexico 87103
        (505) 346-7274

I HEREBY CERTIFY that on the 19th day of August 2019, I filed the foregoing pleading electronically through the CM/ECF system and was delivered via email to counsel of record.

*__Filed Electronically__*
NORMAN CAIRNS
Assistant U.S. Attorney